**IN THE U.S. DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| XPO LOGISTICS FREIGHT, INC., f/k/a CON-WAY MULTIMODAL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>DENISE MARKS and NT LOGISTICS, INC., a Texas corporation,<br><br>Defendants. | §§§§§§§§§§§§§<br><br>CIVIL ACTION NO. |

**COMPLAINT FOR**
**INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, XPO LOGISTICS FREIGHT, INC., formerly known as CON-WAY MULTIMODAL, INC. ("XPO"), by its attorneys and as its Complaint for Injunctive Relief and Damages against Defendants DENISE MARKS ("Marks") and NT LOGISTICS, INC., ("NT Logistics") states:

**SUMMARY OF THE ACTION**

1. This is an action involving breach of restrictive covenants, threatened trade secret misappropriation and tortious interference by a former Account Manager of XPO, Marks, and her new employer, NT Logistics. Marks recently resigned from XPO to go to work as a Senior Account Manager for NT Logistics, a direct competitor in the third-party logistics industry, in a nearly identical capacity and with nearly identical responsibilities.

## PARTIES, JURISDICTION AND VENUE

2. XPO is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Ann Arbor, Michigan. XPO is a leading provider of third-party logistics.

3. Marks is an individual who is a citizen and resident of Frisco, Texas. She is a former Senior Account Manager at XPO. Marks resigned her XPO employment on or about November 15, 2015. Marks then immediately went to work for NT Logistics in a role that is identical to her former XPO role, namely a Senior Account Manager.

4. NT Logistics is a corporation organized and existing under the laws of the State of Texas and has its principal place of business in Frisco, Texas. NT Logistics is a direct or indirect competitor of XPO in that it provides third-party logistics.

5. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as this controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

7. Prior to resigning in November of 2015, Marks had been continuously employed by XPO since April of 2013, first as an Inside Sales Associate and ultimately as a Senior Account Manager in Frisco, Texas. In that capacity, she served as the primary contact between XPO and her assigned customers, securing new shipping business and maintaining existing shipping customer relationships.

8. As a Senior Account Manager, Marks was assigned anywhere between 25 and 50 customers, with geographic locations throughout the country.

9. As a Senior Account Manager, Marks had access to the proprietary and confidential information in XPO's PowerBroker and Sharepoint software and databases, including the entire sales history for each XPO customer she serviced, as well as other branch customers she did not service. The information in PowerBroker included customer contacts, decisionmakers and preferences, the specific services provided by XPO to the customers, shipment pickup and destination information, the shipping lanes and outside carriers used by XPO to make customer shipments, the costs paid by XPO to outside carriers for each such service, the rates XPO charged each customer for each such service and, therefore, XPO's profit margins by customer. The information in Sharepoint included information on company shipping bids, contracts and financial performance.

10. As a condition of her XPO employment and in consideration for that employment, her participation in an enhanced commission plan and her access to XPO's confidential and proprietary information and existing customer base, Marks executed a Confidentiality, Non-Solicitation and Non-Competition Agreement on June 10, 2013 (the "Agreement" is attached hereto as <u>Exhibit A</u>). The Agreement is governed by Texas law. *See* Exhibit A at ¶9.

11. Paragraph 2 of the Agreement requires that Marks:

> will not disclose any Confidential Information to any person, corporation or other entity, agency or court …, nor will you use such Confidential Information for your own benefit or that of any other person, corporation, government or other entity except as is required by law. *Id.*

12. Paragraph 2 of the Agreement defines "Confidential Information" in relevant part as:

> (a) proprietary information of Employer; (b) information marked or designated by Employer as confidential; (c) information that is known by you to be treated by Employer as confidential; and (d) information provided to Employer by third parties which Employer is obligated to keep confidential. Confidential Information includes but is not limited to trade secrets as defined under the

Uniform Trade Secrets Act (the "Act"), and all information relating to Employer's customer lists, carrier relationships, business strategies, pricing, customers, technology, products, costs, employees (, [sic.] marketing plans, computer programs or systems, inventions, developments, and trade secrets of every kind and character, whether or not such information is trade secret under the Act. *Id.*

13. Paragraph 3 of the Agreement contains Marks' agreement not to compete with XPO for a period of three-months:

Covenant to Not Compete. In order for Employer to reasonably protect its interests in the competitive use of any Confidential Information, knowledge or relationships concerning the business of Employer and its affiliates to which you will have access because of the nature of your employment by Employer, you agree that during your employment and for a period of three (3) months thereafter (the "Non-Compete Restriction Period"), you will not, directly or indirectly, whether as officer, director, employee, stockholder agent, partner, consultant or otherwise within the United States, work for, engage in or have any interest in or connection with (1) any business or other entity which completes with Employer's or its affiliates' business or (2) any other business in which Employer has a protected competitive interest or that competes with Employer or its affiliates, or (3) businesses which are contemplated within Employer's strategic planning efforts as of the date of your separation from employment. In addition, you will not, directly or indirectly, engage in any competing activities for any entity during the Non-Compete Restriction Period…

Paragraph 3 of the Agreement further provides that:

because of the competitive and specialized nature of the Employer's business, you acknowledge and agree that it is reasonable to include all of North America as the geographic limitation in this provision. *Id.*[1]

14. Paragraph 5 of the Agreement provides that the Non-Compete Period automatically tolls upon breach and does not begin running again until the breach is resolved. *Id.*

15. Paragraph 4 of the Agreement further contains a two-year prohibition on Marks soliciting XPO's customers and employees:

Covenant to Not Solicit Employees or Customers. In order for Employer to reasonably protect its interest in the competitive use of any Confidential Information, knowledge or relationships concerning the business of Employer and its affiliates to which you will have access because of the nature of your employment by Employer, you also agree that you will not, directly or indirectly,

---

[1] Paragraph 3 also has certain exclusions that are not applicable here. *Id.*

**XTO'S COMPLAINT FOR INJUCTIVE RELIEF AND DAMAGES**     Page 4

solicit, divert, take away or hire away (or attempt to solicit, divert, take away or hire away) any employees or customers of Employer for yourself or for any other business organization for a period of two years after your employment with Employer ends (the "Non-Solicit Restriction Period"). *Id.*

16. The Agreement also requires Marks to provide any prospective, new employer with a copy of the Agreement before beginning employment. *Id.* at ¶7.

17. The Agreement provides that if any portion of the non-compete or non-solicitation provisions are held unenforceable, "the maximum restriction of time, scope of activities, and geographic area reasonable under the circumstances will be substituted for any such restrictions held unenforceable." *See* Exhibit A at ¶¶3-4.

### Marks' Unlawful Conduct

18. As set forth above, Marks began working as a Senior Account Manager for NT Logistics in Frisco, Texas immediately upon or shortly after resigning from XPO on or about November 15, 2015, without notifying XPO of that fact prior to commencing work.

19. NT Logistics is a direct or indirect competitor of XPO in that it provides third-party logistics services to customers throughout the U.S. Moreover, Marks' responsibilities for NT Logistics involve the same kinds of customers, shipments and lanes that she worked on behalf of XPO.

20. As NT Logistics is a competitor of XPO within the geographic area referenced in the Agreement and, indeed, in the same geographic area where she worked for XPO, Marks' employment at NT Logistics is in direct violation of the noncompete obligations of the Agreement. *See* Exhibit A at ¶3.

21. Moreover, the Confidential Information to which Marks had access at XPO is and will continue to be of substantial benefit to Marks in her sales position at NT Logistics.

22.     On information and belief, Marks has begun to solicit and/or attempted to solicit customers of XPO on behalf of NT Logistics in violation of the nonsolicit obligations of the Agreement.  *See id.* at ¶4.

23.     On information and belief, Marks has used, and is currently using, the Confidential Information identified in paragraphs 9 and 12 (collectively, "Confidential Information") to solicit business for her new employer.  In addition, Marks will inevitably and necessarily use that Confidential Information working for NT Logistics in the same capacity that she worked for XPO.

## COUNT I
## BREACH OF CONTRACT
(Against Marks)

24.     XPO restates and incorporates by reference the allegations contained in Paragraphs 1 through 23 of this Complaint, as if fully set forth herein.

25.     The Agreement is a valid and legally binding contract.  The restrictive covenants contained therein are supported by adequate consideration and are ancillary to or part of an otherwise enforceable agreement at the time Agreement was made, namely Marks' initial and continued employment with XPO, her participation in the enhanced commission plan and XPO having promised and actually given her access to its Confidential Information and customer relationships, as aforesaid.  *See* Exhibit A at p. 1.

26.     The Agreement contains valid, narrowly tailored restrictive covenants, and do not impose a greater restraint than is necessary to protect XPO's goodwill and its other legitimate business interests, including Confidential Information and trade secrets, to which Marks had access by virtue of her XPO employment.

27. XPO has demanded without success that Marks abide by and/or meet the terms and obligations under the Agreement, including its provisions regarding non-competition, non-solicitation and non-disclosure of Confidential Information.

28. By going to work for NT Logistics in the same capacity as she worked for XPO, Marks has breached paragraph 3 of the Agreement.

29. Additionally, and on information and belief, by soliciting, or attempting to solicit, customers of XPO, Marks has breached paragraph 4 of the Agreement.

30. On information and belief, Marks has used and disclosed XPO's Confidential Information in her sales position at NT Logistics. By doing so, Marks has breached paragraph 2 of the Agreement.

31. As a direct and proximate result of Marks' material breaches of the Agreement, XPO has been damaged, and in all likelihood will continue to sustain significant foreseeable damages.

32. Unless enjoined from further breaching the Agreement, the conduct of Marks will cause substantial, immediate, and irreparable injury, damage and loss to XPO in an amount that cannot presently be determined and/or cannot be fully quantified.

33. More specifically, Marks' knowledge of and relationships with XPO's customers and her knowledge of XPO's Confidential Information as aforesaid enable her and NT Logistics to unfairly compete with XPO, without expending the same time, effort or expense to develop that information or relationships.

34. XPO's damages are irreparable and cannot be adequately compensated by money because there is no way for XPO to determine how much customer business it will lose over time because of Marks' unlawful and unfair competition.

35.     XPO has retained the undersigned attorneys to prosecute this claim and is entitled to its reasonable and necessary attorneys' fees and expenses to paragraph 10 of the Agreement and Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.*

36.     XPO has performed all of its obligations under the Agreement prior to Marks' breaches, including all conditions precedent.

**WHEREFORE**, Plaintiff, XPO Logistics Freight, Inc., respectfully requests that this Court:

(a)    enter a preliminary and permanent injunction:

   i.   enjoining Defendant Denise Marks, from directly or indirectly engaging in employment with or providing services to Defendant NT Logistics, Inc., or any of its divisions or affiliates within North America for a period of three full months from the date of the injunction;

   ii.  enjoining Defendant Denise Marks, and all other persons who are in active concert or participation with her who have actual notice of the order, from directly or indirectly soliciting, or attempting to solicit, any customers of XPO for a period of two years;

   iii. requiring Defendant Denise Marks, and all other persons who are in active concert or participation with her who have actual notice of the order, to account for all copying, use or disclosure of all XPO property in her possession or control, including but not limited to all information, flash drives and other removable storage devices containing XPO's Confidential Information, and any additional information that in any way relates to XPO customers, carriers, services, or operations, whether such

      information is maintained in hard copy or has been electronically stored on any computers or memory devices;

   iv. requiring Defendant Denise Marks, and all other persons who are in active concert or participation with her who have actual notice of the order, to account for all compensation, profits, monies, accruals or other benefits she derived or received as a result of any transaction constituting a breach of the Agreement; and

   v. enjoining Defendant Denise Marks, and all other persons who are in active concert or participation with her who have actual notice of the order, from using or disclosing the aforesaid Confidential Information; and

(b) award XPO actual damages in an amount to be proved at trial;

(c) award XPO its reasonable and necessary attorneys' fees and costs incurred in this action; and

(d) award XPO such other relief in its favor as is appropriate under the circumstances.

## COUNT II
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS
(Against NT Logistics)

37. XPO restates and incorporates by reference the allegations contained in Paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

38. At all times relevant hereto, XPO had valid and enforceable confidentiality, non-disclosure and/or non-competition agreements as set forth in the Agreement.

39. Pursuant to paragraph 7 of the Agreement, Marks was required to inform any prospective employer, such as NT Logistics, of her contractual restrictions. *See* Exhibit A at ¶7. On information and belief, she did so prior to commencing employment with NT Logistics.

40. Moreover, XPO's counsel apprised NT Logistics of Marks' contractual restrictions in early December of 2015.

41. Notwithstanding that awareness, NT Logistics intentionally, without justification, maliciously and for an improper purpose or by improper means, induced, encouraged and/or assisted Marks to breach their contractual confidentiality, non-disclosure and/or non-competition obligations to XPO.

42. As a proximate cause of the wrongful conduct of NT Logistics, Marks did in fact breach her contractual confidentiality, non-disclosure and/or non-competition obligations to XPO.

43. XPO has suffered actual damages on account of NT Logistics' wrongful conduct.

**WHEREFORE**, Plaintiff, XPO Logistics Freight, Inc., respectfully requests that this Court:

(a) enter a preliminary and permanent injunction enjoining Defendant NT Logistics, Inc., or any of its divisions or affiliates, and all other persons who are in active concert or participation with it who have actual notice of the order, from directly or indirectly employing Marks anywhere within North America for a period of three months;

(b) enter a preliminary and permanent injunction enjoining Defendant NT Logistics, Inc., or any of its divisions or affiliates, and all other persons who are in active concert or participation with it who have actual notice of the order, from directly or indirectly inducing Marks or any other current or former employees of XPO to breach their contractual confidentiality, non-disclosure or other obligations to XPO;

(c) award XPO damages in an amount to be proved at trial;

(d) award XPO the costs incurred in this action;

(e) award exemplary damages against the aforesaid NT Logistics in XPO's favor; and

(f) award XPO such other relief in its favor as is appropriate under the circumstances.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
(Against All Defendants)

44. XPO restates and incorporates by reference the allegations contained in Paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

45. XPO's Confidential Information, identified in paragraphs 9 and 12 (also, "Trade Secrets" for purposes of this Count), constitutes trade secrets within the meaning of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.002(6).

46. The Trade Secrets derive actual or potential economic value from not being generally known to and not being readily ascertainable by proper means to other persons and entities, like NT Logistics, which can obtain economic value from their disclosure and use.

47. XPO has taken reasonable steps to protect the secrecy and confidentiality of the Trade Secrets, including but not limited to: limiting access to the Trade Secrets to those who have a legitimate business purpose to do so; password protecting access to the Trade Secrets in computer form; having employees and others with access agree to non-disclosure, return of information and other restrictive covenants like those contained in the Agreement; adopting corporate policies prohibiting their improper retention, use or disclosure; and enforcing the restrictive covenants of the Agreement.

48. Marks gained knowledge and access to the Trade Secrets while she was employed by XPO in a position of trust and confidence.

49. Given Marks' position of trust and confidence with XPO and her contractual non-disclosure obligations under the Agreement, it would be inequitable and unjust for her to keep, use or disclose the Trade Secrets to further her own interests and/or that of her new employer, NT Logistics.

50. The Trade Secrets would permit Defendants to unfairly compete with XPO without expending any of the same time, effort, money or intellectual capital that XPO undertook to develop them. For example, the Trade Secrets will enable Defendants to target XPO's most lucrative customers, avoid poor (e.g. unprofitable or slow paying) customers, and increase the likelihood of winning lucrative customer business because they will already know XPO prices, costs, carriers, margins and other terms in directly competitive bidding situations.

51. On information and belief, Marks (and therefore NT Logistics) has willfully and maliciously misappropriated XPO's Trade Secrets by obtaining, acquiring, disclosing and/or using them in violation of her statutory, common law and contractual duties to XPO, and without its express or implied authority.

52. In addition, Marks (and therefore NT Logistics) will inevitably and necessarily use and/or disclose XPO's aforesaid Trade Secrets if permitted to continue working for NT Logistics because:

    (a) she fulfilled her responsibilities at XPO by relying on and/or using the Trade Secrets;

    (b) she is fulfilling identical or substantially the same role at NT Logistics as she did at XPO; and

    (c) NT Logistics a direct competitor to XPO in similar business lines that are the subject of the Trade Secrets.

53. Unless Marks is enjoined from working for NT Logistics, Defendants' conduct will cause substantial, immediate, and irreparable injury, damage and loss to XPO in an amount that cannot presently be determined and/or cannot be fully quantified.

54. There is no way to put a monetary value on the competitive advantage XPO would have enjoyed through its continuing, exclusive use of the Trade Secrets, nor is there any way for XPO to determine how many customers or how much revenue or goodwill it will lose over time because of Defendants' use of the Trade Secrets.

55. The harm that XPO has suffered, and will continue to suffer, as a result of Defendants' misappropriation also outweighs any potential harm they will suffer as a result of the injunctive relief XPO seeks. Specifically, NT Logistics will continue to be able to compete in its chosen industry, only without the benefit of Marks and XPO's Trade Secrets. Moreover, Marks will be free to seek any other position that does not involve her actual or inevitable use or disclosure of XPO's Trade Secrets and does not violate her restrictive covenant contained in the Agreement.

**WHEREFORE**, Plaintiff, XPO LOGISTICS FREIGHT, INC., respectfully requests that this Court:

(a) Enter a preliminary and permanent injunction:

   i. Requiring Defendants (and all other persons who are in active concert or participation with them who have actual notice of the order), to account for all copying, use or disclosure of all XPO property in their possession or control, including but not limited to all information, flash drives and other removable storage devices containing XPO's Trade Secrets, and any additional information that in any way relates to XPO's customers,

        carriers, services, or operations, whether such information is maintained in hard copy or has been electronically stored on any computers or memory devices;

    ii.    Enjoining Defendants (and all other persons who are in active concert or participation with them who have actual notice of the order), from using or disclosing the aforesaid Trade Secrets; and

    iii.    Enjoining Defendants from directly or indirectly having Marks provide any professional or other services to NT Logistics for a period of no less than one year from the date of the order.

(b)    Award XPO its actual damages or the amount of Defendants' unjust enrichment, whichever is greater, plus costs in an amount to be determined at trial;

(c)    Award XPO exemplary damages, in an amount to be determined at trial, per Texas Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.004(b).

(c)    Award attorneys' fees against Defendants and in XPO's favor, in an amount to be determined at trial, per Texas Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.005 and paragraph 10 of the Agreement; and

(d)    Grant such other and further relief in XPO's favor as the Court deems just and proper under the circumstances.

Respectfully submitted,

By: *Gina Viccinelli*
      **GINA VICCINELLI**
      State Bar No. 24013685
      Gina@hermes-law.com
      **JOHN HARDAGE**
      State Bar No. 24075471
      John@hermes-law.com

**HERMES LAW, P.C.**
Oilwell Supply Building
2001 N. Lamar Street, Suite 450
Dallas, TX 75202
Telephone: 214.749.6800
Telecopier: 214.749.6801
*Local Counsel for Plaintiff XPO Logistics Freight, Inc. f/k/a Con-Way Multimodal, Inc.* [2]

---

[2] Counsel is currently preparing *Pro Hac Vice* motions for Plaintiff's lead counsel Robert H. Smeltzer, Simon J. Hall, and Christopher J. Riley of Lowis & Gellen, L.L.P. in Chicago, Illinois.

### Confidentiality, Non-Solicitation and Non-Competition Agreement

During your employment with Con-way Multimodal, Inc. ("Employer") in your position as **Inside Sales Associate**, you ("Employee") receive confidential information concerning Employer, its parent and affiliates, and its suppliers and customers. In consideration of your participation in the enhanced commission plan which is being implemented contemporaneously with this Confidentiality, Non-Solicitation and Non-Competition Agreement ("Agreement") and your receipt of Confidential Information, which is required for your position, you acknowledge and agree to the following terms:

1. <u>Consideration</u>: Employer shall pay Employee compensation in accordance with the compensation plan adopted contemporaneously with this Agreement or as subsequently amended from time to time by the Employer. Employee accepts such compensation as fair and adequate compensation for the mutual promises set forth in this Agreement. Employee further acknowledges that the payment of consideration does not, and is not intended to, alter the at-will nature of Employee's employment with Employer, such that either Employee or Employer may terminate the employment relationship at any time.

2. <u>Confidentiality</u>. You acknowledge that in the course of your employment you will have access to proprietary information, trade secrets, and other information treated by Employer as confidential (hereinafter collectively referred to as "Confidential Information"), that such information is a valuable asset of Employer and that its disclosure or unauthorized use will cause Employer irreparable harm. As used in this Agreement, the term "Confidential Information" means: (a) proprietary information of Employer; (b) information marked or designated by Employer as confidential; (c) information that is known by you to be treated by Employer as confidential; and (d) information provided to Employer by third parties which Employer is obligated to keep confidential. Confidential Information includes but is not limited to trade secrets as defined under the Uniform Trade Secrets Act (the "Act"), and all information relating to Employer's customer lists, carrier relationships, business strategies, pricing, customers, technology, products, costs, employees (, marketing plans, computer programs or systems, inventions, developments, and trade secrets of every kind and character, whether or not such information is a trade secret under the Act. You agree that you will not disclose any Confidential Information to any person, corporation or other entity, agency or court unless compelled to do so pursuant to legal process (*e.g.*, a summons or subpoena) or otherwise required by law and then only after providing Employer with prior notice and a copy of the legal process, nor will you use such Confidential Information for your own benefit or that of any other person, corporation, government or other entity except as is required by law. You agree that upon separation from employment, whether or not the separation is voluntary (or earlier if requested by Employer), you will return to Employer all originals and copies of documents and other materials relating to Employer or containing or derived from Confidential Information that are in your possession or control. If requested, you also agree to provide written certification signed by you and satisfactory to Employer to the effect that all such documents and materials have been returned.

3. <u>Covenant to Not Compete</u>. In order for Employer to reasonably protect its interests in the competitive use of any Confidential Information, knowledge or relationships concerning the business of Employer and its affiliates to which you will have access because of the nature of your employment by Employer, you agree that during your employment and for a period of **three (3) months** thereafter (the "Non-Compete Restriction Period"), you will not, directly or indirectly, whether as officer, director, employee, stockholder agent, partner, consultant, or otherwise within the United States, work for, engage in, or have any interest in or connection with (1) any business or other entity which competes with Employer's or its affiliates'

1

business or (2) any other business in which Employer has a protected competitive interest or that competes with Employer or its affiliates, or (3) businesses which are contemplated within Employer's strategic planning efforts as of the date of your separation from employment. In addition, you will not, directly or indirectly, engage in any competing activities for any entity during the Non-Compete Restriction Period. This competition restriction is not applicable to: (a) ownership of not more than ten percent of the stock of any publicly-traded corporation; (b) work for a business which competes with Employer, where the work is for a division or Section of such entity which is in a business not competitive with Employer's ongoing or planned business; or (c) work for a competitor where the job assignment is not one where Employer's Confidential Information would be of a potential benefit; provided, however, that exclusions (b) and (c) are applicable only upon the condition that you notify Employer prior to commencing such work and provide reasonable assurance to Employer that Employer's Confidential Information will be protected against unauthorized disclosure or use or inadvertent disclosure or use. You specifically acknowledge and agree that the terms of this provision are reasonable in every respect. In particular, because of the competitive and specialized nature of the Employer's business, you acknowledge and agree that it is reasonable to include all of North America as the geographic limitation in this provision. If a court holds that any portion of this paragraph is unenforceable, the maximum restrictions of time, scope of activities, and geographic area reasonable under the circumstances will be substituted for any such restrictions held unenforceable. The foregoing will not apply to service on the board of any not-for-profit corporation.

    4.      <u>Covenant to Not Solicit Employees or Customers</u>. In order for Employer to reasonably protect its interests in the competitive use of any Confidential Information, knowledge or relationships concerning the business of Employer and its affiliates to which you will have access because of the nature of your employment by Employer, you also agree that you will not, directly or indirectly, solicit, divert, take away or hire away (or attempt to solicit, divert, take away or hire away) any employees or customers of Employer for yourself or for any other company or business organization for a period of two years after your employment with Employer ends (the "Non-Solicit Restriction Period"). You specifically acknowledge and agree that the terms of this provision are reasonable in every respect. If a court holds that any portion of this paragraph is unenforceable, the maximum restrictions of time and scope of activities reasonable under the circumstances will be substituted for any such restrictions held unenforceable.

    5.      <u>Extension of Time</u>. In the event you breach paragraph 2, the Non-Compete Restriction Period shall automatically toll from the date of the first breach, and all subsequent breaches, until the resolution of the breach through private settlement, judicial or other action, including all appeals. The Non-Compete Restriction Period shall continue upon the effective date of any such settlement, judicial or other resolution.

    6.      <u>Waiver of Covenant to Not Compete</u>. Employer has the option, in its sole discretion, to elect to waive all or a portion of the Non-Compete Restriction Period. In the event all or a portion of the Non-Compete Restriction Period is waived, Employer agrees to notify you in writing of any waiver within fifteen (15) business days from the date Employer receives written notice from you of your resignation and information regarding your new employment. Information regarding your new employment must include, at a minimum, your new employer's name, your job title, location of your office and a description of your duties and responsibilities.

    7.      <u>Notification To Future Employers</u>. If your employment with Company ends, you will give your next employer a copy of this Agreement before beginning employment. You authorize Employer to notify any of your actual or potential future employers of the terms of this Agreement.

8. <u>Employee Acknowledgement</u>.  Employee acknowledges and warrants that there are no obligations preventing Employee from accepting employment with Employer, or preventing performance of the duties and tasks required by the position referenced herein.

9. <u>Governing Law and Venue</u>.  This Agreement shall be governed by the laws of the State of Texas.  Both parties agree for personal jurisdiction and venue purposes that any legal action to enforce this Agreement shall be in a state or federal court in or for Texas.

10. <u>Attorney Fees</u>.  In the event of any suit or action, in law or equity, to enforce any provision of this Agreement, the substantially prevailing party shall be entitled to recover, in addition to other costs, reasonable costs and attorney fees at trial and in any appeal in such amounts as shall be determined by the court before which such matters are tried or appealed.

_Denise Marks_
PRINT EMPLOYEE NAME

_[signature]_                                           _6/10/13_
EMPLOYEE SIGNATURE                              Date

3